WILLIAM H. LOGAN, APPELLANT, VS. GEO. A. LOGAN ET AL., APPELLEES.

1. A judgment creditor may proceed at law to sell under execution lands or property which his debtor had fraudulently alienated, which are subject to execution, but the existence of this right does not interfere with the right to resort to a court of equity to set aside the frudulent conveyance.

2. Where a judgment creditor files a bill in equity to vacate an alleged fraudulent conveyance of property by the judgment debtor and to subject such property to sale under his execution, if the title had been in the debtor, it is sufficient if the bill allege the existence of a common law judgment and execution in favor of or owned by the creditor.

3. The creditors of a party defrauded have no right, even though the

36

fraud has the effect to diminish or destroy his means of paying them, to bring a suit against the person who defrauds their debtor for the subjection of the property of which the debtor was defrauded to the payment of their judgments.

4. In such case, while the creditors have no rights on account of the fraudulently procuring the debtor to make the mortgage, yet if the mortgage, when executed, contains terms or stipulations which, in effect, are fraudulent and prejudicial to the creditors, such creditors may resort to a court of equity to vacate said mortgage.

5. The statute of frauds (13th Elizabeth) refers to a legal, and not to a moral intent, and when the legal effect of a conveyance is to hinder or delay creditors, the intent will be presumed regardless of the actual motives of the parties.

6. A mortgage of a stock of goods by the owner thereof, under which the mortgagor is permitted by the mortgagee to sell the goods at his discretion, or in the usual course of his business, is fraudulent and void as to the creditors of the mortgagor. *Quere.* Where a mortgage on a stock of merchandise, which is held to be fraudulent, includes other property, is said mortgage void only as to the merchandise, or is it void *in toto ?*

Appeal from the Circuit Court for Jackson County.

The facts of the case are stated in the opinion.

*John W. Malone* for Appellant.

*Liddon & Carter* for Appellees.

The Chief-Justice delivered the opinion of the court:

Complainant, William H. Logan, filed his bill against George A. Logan, Slade & Etheredge, Garrett & Sons, Pollock & Co., and the Eatherly Hardware Company.

The bill alleges a recovery of a judgment by the complainant against the defendant, George A. Logan, in the Circuit Court of Jackson county on the first day of De-

cember, A. D. 1884, for $4,889.50, and the issue of execu-
tion thereon; that on the 21st of November, 1884, George
A. Logan was induced by the fraud and deceit of the at-
torneys of Slade & Etheredge, and by their agent, to exe-
cute a mortgage on some real estate in the town of Green-
wood, and a stock of merchandise then in store at the
same place, of which he was in possession, to said Slade &
Etheredge, Garrett & Sons, the Eatherly Hardware Com-
pany and Pollock & Co.

The bill alleges also that a suit was pending in the Cir-
cuit Court of Jackson county by Slade & Etheredge and
their co-mortgagees against G. A. Logan for the foreclos-
ure of the mortgage; that such proceedings were had
therein that an injunction had been granted restraining G.
A. Logan from selling the goods, otherwise than for cash,
and requiring him to deposit the proceeds of such sale in
the registry of the court; and further, that on the 14th
day of February, 1885, the Judge appointed a receiver to
take charge of said stock of goods, and to dispose of them
as directed.

The bill prayed that Slade & Etheredge, and their co-
mortgagees, might be restrained from prosecuting their
suit further, and that the same be dismissed, and all steps
taken therein be vacated and nullified. The defendants,
Slade & Etheredge, filed an answer to the bill for the pur-
pose of resisting the issuance of the injunction prayed for,
and also a demurrer to the bill on several grounds. The
judge refused the injunction and sustained the demurrer.

One of the grounds of demurrer was that the complain-
ant had an adequate remedy at law. We do not think
this ground is tenable. While he had an undoubted right
to have levied his execution at any time before the court
had taken the goods into its custody, by the injunction
commanding Geo. A. Logan to sell them and deposit the

proceeds in the registry of the court, and by the further appointment of a receiver to take charge of, and sell them, and while he might still have levied his execution by obtaining the permission of the court, upon a petition showing himself entitled to take such a course, yet the fraud alleged in the bill gave him also a concurrent right to come into a court of equity. Wait, in his treatise on Fraudulent Conveyances and Creditor's Bill, sec. 59, says: "A judgment creditor may proceed at law to sell under execution lands or property which his debtor has fraudulently alienated, which are subject to execution. The attempted transfer may be treated as a nullity and the property subjected to seizure and sale upon execution, the same as though no covinous transfer had ever been made. The creditor in such cases may consider the debtor as still the owner of the property, and is entitled to purchase it in order to obtain satisfaction of the claim the same as if the title were unincumbered by the fraudulent deed or transfer." See also Thomas vs. Nealy, 50 Miss., 313.

Further: "Fraud is one of the recognized subjects of equity jurisdiction, and is the most ancient foundation of its power. The existence, then, of the remedy at law does not interfere with the right to resort to a court of equity for the vacation of the fraudulent conveyance as an obstacle in the way of the full enforcement of the judgment, and to remove a cloud on the title to the property." Wait on Fraudulent Conveyances, §60.

"The suit in equity is sometimes said to be an ancillary relief in aid of the legal remedy, as a court of equity does not intervene to enforce the payment of debts." *Ibid.*

It is also alleged as a ground of demurrer that the execution of complainant had not been returned to the clerk's office unsatisfied. The rule laid down by this court in Robinson vs. Springfield Company, 21 Fla., 203, was to the

effect that this was only necessary when the title to the property had never been in the debtor, but was held by another on a secret trust for him, or in case of an equitable asset which could not be levied on by execution at law. When the creditor seeks the aid of a court of equity for the satisfaction of a judgment out of the property of his debtor, the title to which property has been in the debtor, but has been fraudulently transferred, it is sufficient for the creditor to show a judgment at law and execution to entitle him to resort to equity to vacate such fraudulent conveyance.

The bill alleges that this mortgage was procured from G. A. Logan by a fraud practiced on him by the mortgagees and their attorneys. The defendants insist and set it up as one of the grounds of the demurrer that the fraud must have been participated in by both of the parties—the mortgagor and the mortgagee—and that the fraud of the mortgagees in procuring it made the mortgage voidable, and not void, and only at the instance of G. A. Logan; that the creditor could not avail. himself of this right of his debtor.

There is no doubt of the correctness of this proposition as insisted on by the counsel for the appellees. We think, however, that this doctrine is confined to the fraud practiced on the debtor to *induce him to execute the mortgage.* The mortgage being executed, and being free from all objections except the fraud in procuring it, the principle urged by counsel would apply. But this is not all the case made by the bill. In addition to the allegation that its execution was procured by fraud, it alleges that as to the stock of merchandise it was void because " it contained no provision for said Logan to account for the sales of said property, but he had, by the terms of said deed, every right

and power to dispose of said merchandise to the detriment of your orator."

Of the fraud in procuring it to be executed the creditor cannot complain, but of the fraud inherent in the mortgage itself his rights as a creditor are involved, and he has such a right.

If the creditor cannot assail the mortgage for being fraudulently procured, when it is executed he can assail it for fraud apparent upon it, by which his rights are affected.

When we come to consider the mortgage itself we do so on its own terms, and not with reference to what influences were exercised to induce the debtor to execute it. In thus considering it, if it in effect is a fraud upon the right of the creditor, the motives of the parties are of no consequence. The decisions on this point are numerous. See Robinson vs. Elliott, 22 Wall., 513. "By the term fraud *the legal intent and effect of the acts complained of* is meant. The law has a standard for measuring the intent of parties, and declares an illegal act, prejudicial to the rights of others, a fraud on such rights, although the parties deny all intention of committing a fraud." Kirby vs. Ingersoll, 1 Harrington's Ch., 172. And this principle was reaffirmed by the Supreme Court of Michigan, 1 Doug., 477, which found the transaction fraudulent without " imputing to the highly respectable parties in this case a premeditated or wicked intention to injure the interest of complainant." See also Graham vs. Chapman, 12 C. B., 85 ; Wheeldon vs. Wilson, 44 Maine, 11 ; Grover vs. Wakeman, 11 Wendell, 187. In this case the court says the statute of frauds refers to a legal and not to a moral intent. Its legal intent is not to be gathered from the motives of the parties, but from the legal effect of their acts. If the allegation in the bill above quoted, that the mortgagor had, by the terms of said mortgage, every right and power to dispose of the merchandise,

to the detriment of complainant, be true, and the demurrer admits its truth, we are of the opinion that the mortgage was void as to the creditors of G. A. Logan.

Mr. Pearce, in a Treatise on Mortgages of Merchandise, pp. 1 and 2, asks these questions:

1. Is a mortgage of a stock of goods in trade, under which the mortgagor is permitted by the mortgagee to sell the goods at his discretion in the usual course of his business, essentially fraudulent as to creditors of the mortgagor?

2. If it be, is it still so in case the agreement or understanding between the mortgagee and mortgagor, permiting such sales, is not shown upon the face of the mortgage, but is proven by evidence *aliunde?*

He says further " that a candid and impartial investigation finds both these questions answered in the affirmative by the great weight of American authority, considering the decisions not only as precedents, but as enunciations of principle." See also Robinson vs. Elliott, 22 Wallace, 513, and the numerous cases cited in Pearce on Mortgages of Merchandise.

As to the real estate mentioned in the mortgage, or any other property included in it, the possession of which was to remain with the mortgagor, and which he had no right to sell at his discretion, there being no objection to the mortgage of such property except its being procured by fraud, and that, as we have seen, not being a fraud available to complainant, the mortgage was valid unless the fraud as to a part of the property vitiated the whole, a point which we do not decide.

The decree of the court sustaining the demurrer is reversed and the cause remanded for further proceedings not inconsistent with this opinion.