### OSBORNE and others *v.* BARGE and others.

*(Circuit Court, N. D. Iowa, C. D.* January Term, 1887.)

**1. PARTNERSHIP—ASSIGNMENT FOR BENEFIT OF CREDITORS.**
B. and K., partners, agreed upon an assignment for the benefit of creditors, and directed an attorney to prepare the necessary papers, and draw up a schedule of assets, November 6, 1886. November 8th, at 8 A. M., the deed of assignment was executed in the firm name by B. November 8th, at 10 A. M., K., without the knowledge or consent of his partner, executed a chattel mortgage of the firm stock to secure a note given for indebtedness of the firm to the plaintiffs, and payable November 9, 1886. *Held* that, the assignment having been agreed to by the firm, each partner was authorized to execute the deed thereof, and the same was valid.

**2. SAME—CHATTEL MORTGAGE.**
*Held, further*, that, the chattel mortgage not being in furtherance of the business, neither partner had authority to execute the same without the consent of the firm, and therefore it was invalid.

In Equity. Bill to foreclose chattel mortgage. Exceptions to answer.

*Martin & Wamback* and *Wright & Farrell*, for complainants.
*Kamrar & Borye* and *W. J. Covil*, for defendants.

SHIRAS, J. The bill filed in this cause sets forth that on the eighth day of November, 1886, the firm of Barge & King, being indebted to complainants in the sum of $2,529.31 for goods sold, executed their certain promissory note, payable on or before November 9, 1886, for the sum named; and to secure the payment thereof also executed a chattel

mortgage upon the property of the firm, the same being signed "BARGE & KING, by W. T. KING." To the bill filed herein, for the purpose of foreclosing this mortgage, Barge & King, B. F. Barge, W. T. King, and Robert Fullerton are made parties defendant; and B. F. Barge and Robert Fullerton answer the bill, setting forth that on the sixth day of November, 1886, the firm of Barge & King, composed of B. F. Barge and W. T. King, being wholly insolvent, the partners mutually agreed that a general assignment, for the benefit of their creditors, should be made by the firm to Robert Fullerton, as assignee; that the partners went to the office of an attorney, and directed him to prepare the necessary papers to complete such assignment; that the said W. T. King prepared and signed the schedule of assets and liabilities, intended to be attached to the deed of assignment when prepared; and that about 8 o'clock A. M. of November 8th the said assignment was completed, the firm name being signed to the deed by B. F. Barge. It is also averred that the mortgage to complainants was not executed until about 10 o'clock A. M. of November 8th, at which time the firm of Barge & King had ceased to exist; that said King had no authority to execute the mortgage in the firm name, the same being done without the knowledge or assent of said Barge; and that the mortgage is consequently invalid. Fullerton, the assignee in the deed of general assignment, sets forth the execution and delivery of the deed, his acceptance of the trust thereby created, and avers that, as against such assignment, the mortgage is of no effect. It appears, therefore, that, the firm being insolvent, one partner executed a deed of general assignment, and the other a chattel mortgage to the complainants; and the exceptions to the answer present the question whether either one, and, if so, which, of these instruments, is valid, under the state of facts set forth in the answer.

As a general rule, it is held that each member of an ordinary partnership has authority, as the agent of the firm, to do such acts as are necessary or usual in the transaction of the business in the ordinary way; but that, as to acts not in the furtherance of the business of the partnership in the ordinary way, but which may put an end to the same, or the natural result of which is to take the control and management of the firm business and property from the partners, it is necessary, to sustain the validity of such acts, that it appear that the same were done with the assent of all the partners. As the effect of a general assignment for the benefit of creditors under the Iowa statutes is to convey all the property of the assignors, not exempt from execution, to the assignee, and to terminate the control of the assignors over such property, it follows that such an assignment, when lawfully made by a firm, practically terminates the business of the partnership; and such an act, therefore, cannot be deemed to be done in furtherance of the ordinary business of the firm, but, on the contrary, it terminates the business of the partnership, and, to give it validity, it must appear that the assignment was assented to by all the partners. There are cases wherein, by reason of the absence of some of the partners, or their inability to act, as by reason of insanity or the like, a general assignment, executed by one of the partners, has

been sustained; but in these cases the assent of all has been inferred, and hence even these cases do not present an exception to the rule that, to make a general assignment valid, the same must have been executed with the assent of all the partners. *Emerson* v. *Senter*, 118 U. S. 3, 6 Sup. Ct. Rep. 981; *Deming* v. *Colt*, 3 Sandf. 284; *Havens* v. *Hussey*, 5 Paige, 30; *Kirby* v. *Ingersoll*, 1 Doug. 477; *Dana* v. *Lull*, 17 Vt. 390; *Stein* v. *La Dow*, 13 Minn. 413, (Gil. 381;) *Brooks* v. *Sullivan*, 32 Wis. 449; *Loeb* v. *Pierpoint*, 58 Iowa, 469, 12 N. W. Rep. 544.

In the latter case the supreme court of Iowa held that a partner has not the power to execute a general assignment, under the laws of Iowa, without the assent, express or implied, of his copartner, when the latter may be consulted, and is capable of expressing assent or dissent.

To sustain the general assignment set forth in the answer in this cause, it must therefore appear that it was executed with the assent of both partners. It is not necessary that the signature of both partners should be appended to the deed of assignment. The property affected by the assignment belonged to the firm, and the execution of the deed in the firm name is all that is needed to pass the title. The averments of the answer show that it was agreed between the partners that the assignment should be made, that the person to act as assignee was agreed upon, and that the partners jointly gave the instructions for the preparation of the deed of assignment, and both signed the schedule of property attached to the deed. From these facts, thus averred, no other conclusion can be fairly drawn than that both partners assented to the making of the assignment; and, it not appearing that this assent was withdrawn, it must be held that, when the deed of assignment was executed by B. F. Barge, he had authority so to do from his copartner, and the deed is therefore the act of the partners, so far as it appears from anything averred or shown upon the face of the record. According to the allegations of the answer, the deed of assignment was executed before the chattel mortgage to complainants. If so, then the title of the property had passed before the execution of the mortgage, and the latter would not affect the title conveyed to the assignee in trust for the creditors.

The answer also avers that the mortgage was executed by King alone, without the knowledge or assent of Barge, and that it is therefore invalid for want of authority. If a mortgage is given upon the stock in trade of a partnership, and under such circumstances that the giving thereof practically terminates the business of the firm, no reason is perceived why the assent of both partners is not as essential to give validity to such an instrument, as in the case of a general assignment. The mortgage executed to complainants covered practically all the stock of the firm, came due in 24 hours after its date, and gave the mortgagees full power to take immediate possession of the property, and to sell the same for the payment of the mortgage debt. The practical effect, therefore, of the instrument, if enforced, would be to terminate the business of the firm, and to hand over the control and right of disposition of the partnership property to a third party. The right to thus destroy the life and business of the firm is not possessed by one of the partners, and, to

be valid, it must appear that such an instrument was executed by the authority of all the partners.

The position of counsel for complainants, that as complainants, when they received the mortgage, did not know of the dissolution of the firm, or of the execution of the assignment, they are protected, in that they dealt with the partner in ignorance of the dissolution of the firm, and without notice thereof, has no bearing upon the real point at issue. Even if the firm had not been dissolved, or if the assignment had not been executed, the right to execute the chattel mortgage in question was not possessed by the one partner; and the complainants were bound to know that the mortgage, being signed by one partner only, would not bind the firm unless all the partners assented thereto. If, then, it be true, as averred in the answer, that the mortgage was executed by King alone, without the knowledge or assent of his partner, Barge, and that the latter repudiated the same as soon as notified thereof, it follows that the mortgage cannot be deemed to be the act of the firm, and does not bind the firm property.

The exceptions to the answer are therefore overruled.