Dana, Adm'r, v. Lull.

CHARLES DANA, Administrator of GILL WHEELOCK, *v.* JOEL LULL, JR.

When a debtor makes a voluntary assignment of all his property to a trustee for the benefit of certain of his creditors, who are specified, and does not provide that the surplus shall be distributed among all his creditors, but there is either an express reservation of the surplus to himself, or no direction given as to the surplus, the effect of which would be, by implication of law, a resulting trust, as to the surplus, to himself, such assignment is fraudulent *per se* and void.

And this is so, notwithstanding it appears in the end that the property assigned was not sufficient to pay the debts due to the creditors named in the assignment.

And where the assignment, in terms, conveyed all the property, which the assignors owned in certain towns named, and it did *not appear*, either upon the face of the assignment, or from the evidence, that they owned any property which was situated elsewhere, it was held that the court would infer that *all* the property, which the assignors owned, was thereby conveyed.

One of two partners has not authority to assign all the partnership property to a trustee, for the benefit of the creditors of the firm, and thus put an end to the entire business of the firm. REDFIELD, J., and BENNETT, J.

TRESPASS ON THE CASE against the defendant, as sheriff of Windsor County, for not keeping certain property, attached by one Moses Montague, a deputy of the defendant, on a writ in favor of the plaintiff's intestate against Moulton & Hutchinson, and for not delivering the said property to the officer, to whom was delivered the execution obtained in said suit in which the attachment was made. Plea, the general issue, and trial by jury.

On trial the plaintiff gave evidence tending to prove the material allegations in his declaration.

The defendant insisted that the said property, specified in the return of said Montague, was not the property of Moulton & Hutchinson, nor liable to said attachment; and to prove this he offered, among other testimony, a written instrument in these words.

" Know all men by these presents that we, John Moulton, of

' Woodstock in the county of Windsor and State of Vermont, and
' Rufus Hutchinson, of Braintree in the county of Orange and State
' aforesaid, partners in the business of manufacturing wool into
' cloth in the towns of Woodstock and Bridgewater, under the firm
' and name of Moulton & Hutchinson, and under the superinten-
' ence and care of John Moulton, one of said firm of said Moul-
' ton & Hutchinson, now, in consideration that whereas we, the
' said Moulton & Hutchinson, being indebted and owing to divers
' persons large and honorable demands and sureties, which we are
' unable to liquidate or pay, or any part thereof, without a great
' sacrifice and waste of property; therefore we hereby this day as-
' sign and surrender unto Samuel Ford, as our assignee, possession
' of all the wools, cloths, finished, and in various stages of manufac-
' ture, now in the factory at Bridgewater, and at Woodstock, and
' also all other property by us, the said Moulton & Hutchinson,
' owned or possessed of in said towns of Bridegwater and Woodstock,
' and to be disposed of and applied as follows, to wit, first to pay
' certain executions, now in the hands of George C. Pratt, deputy
' sheriff, on part of said goods the said sheriff has levied the said
' executions, and also other attachments, made by the said George
' C. Pratt, sheriff, one in favor of William Eastwood, and one in fa-
' of Joseph Dunbar and Homer Webster and Richard W. South-
' gate, on goods, horses, harnesses and carriages, and, after the said
' executions and attachments shall be fully paid out of the avails of
' the property aforesaid, then the residue of said goods, horses, car-
' riages and other property shall be applied to the paying of other
' debts;—first, to the workmen, and to persons having furnished and
' paid workmen by us employed; and secondly, to persons which we
' are indebted for signing and indorsing notes for our benefit,
' which are not paid ; and also other debts, due for wools, reserving
' all custom goods and wools received of Philo Hatch, Lyman &
' Goodnow, and Adam Hobart & Sons, to manufacture by the
' yard, of which the said Samuel Ford agrees to take charge of, fin-
' ish and deliver to the customers aforesaid. And the said Samuel
' Ford shall at all times, when requested, render an account of his
' doings to us.

  ' Woodstock, Dec. 16, 1839.

(Signed) Moulton & Hutchinson,<br>
By John Moulton."

To the admission of this instrument in evidence the plaintiff objected, but the objection was overruled by the court; to which decision the plaintiff excepted. The defendant also gave evidence tending to prove that the said assignment was executed prior to the said attachment by Montague, and that said Ford, the assignee therein named, took immediate possession of the property conveyed, among which was the property in question in this suit, and that he was in possession of said property at the time it was attached by Montague.

The jury returned a verdict for the defendant. Several questions were raised on trial by the plaintiff's counsel, and were reserved in the bill of exceptions; but the case was decided in the Supreme Court wholly upon the validity of the assignment above set forth, and it is therefore unnecessary to notice them.

*T. Hutchinson* for plaintiff.

We contend that the assignment, offered in evidence by the defendant, ought to have been excluded. It conveys no title at all. It only assigns or surrenders the possession of the property, for Ford to dispose of it in the way therein pointed out, and account to Moulton & Hutchinson on request. It only makes Ford the agent, or trustee, of Moulton & Hutchinson, to keep the property from Wheelock, and is itself, *ipso facto*, a fraud upon Wheelock. *Sherrill* v. *Brush*, 20 Johns. 5. *Hyslop et al.* v. *Clark et al.*, 14 Johns. 458. It was liable to be revoked by Moulton & Hutchinson at pleasure. Hilliard 57. 2 Kent 644.

*O. P. Chandler* for defendant.

The written instrument, admitted in evidence, contained all the essential elements of a trust assignment. It properly commences by declaring the indebtedness of the assignors and the purposes of the assignment. Then follows, " we assign and surrender the possession to said Ford, as our assignee." The word " assign" imports, *ex vi termini*, a legal transfer of title, (Bouvier's Law Dict. 99 ; 5 Johns. 390,) and the terms which follow, " *we* surrender the possession to him as our assignee," in that connection are equivalent to the words *sell and deliver*, and, though perhaps needless, yet they tend to establish clearly the intent and object of the instrument. It

Dana, Adm'r, *v.* Lull.

next declares the purposes of the trust; next is an agreement on Ford's part to execute the provisions of the trust,—which, indeed, he would be bound to do, by receiving the assignment and acting under it; then follows a provision that said Ford should do what a court of chancery would have compelled him to do, to wit, " to render to them an account of his doings." Now we ask by what construction we are to be held to treat this instrument as merely creating an agency? Not by virtue of the last clause, for by that he is not made accountable for the avails of the property to them,—for that he is directed to pay to the creditors,—but only to render an account of his doings,—which any trustee would be required to do to all those interested in the disposition of the trust funds,—as were Moulton & Hutchinson, in this case, to have their debts paid. Such mere agency cannot be inferred from any other part of the instrument; for, on the contrary, every other part of it expressly contravenes and excludes any such construction.

The opinion of the court was delivered by

BENNETT, J. It appears by the bill of exceptions, that, on the trial of this cause in the county court, several questions were reserved, which it will not be necessary to consider, much less to decide. The property now in question belonged to Messrs. Moulton & Hutchinson, and, immediately before the service of the attachment by the defendant's deputy, the property had been assigned by Moulton, one of the firm, for the payment of certain debts; and this action against the sheriff is grounded upon his neglect of duty, in not keeping the property attached, that it might be taken in execution.

If the assignment, made only by Moulton, which is made a part of the bill of exceptions, is *inoperative* upon its face, the jury did not receive such instructions as should have been given them, and the judgment of the county court must be reversed. I, as an individual member of the court, think that Moulton had no power, as a partner, to make such an assignment *as this,* which can bind the firm.

There is nothing in the case to show, and it is not even pretended, that Hutchinson had in any way assented to, or authorized, the assignment at the time of the attachment, unless his assent is to be

implied from the partnership. No doubt, one partner may assign partnership property to a creditor of the firm, to secure or pay a partnership debt. This power rests upon the ground of an implied authority to perform such acts, as are incidental to their common business. But to say that one partner has the power to make a general assignment to a trustee, for the benefit of preferred creditors, is quite a different thing. It, in effect, puts an end to the partnership, and transfers the legal title in the property to a trustee, and clothes him with power, as an agent of the firm, to close up the business. This was the object of the present assignment; and, if sustained, such would be its effect. The power to make sale of the partnership effects, and to pay or secure debts by an assignment of the property to a creditor, resides in each partner, as long as the partnership exists; and the power flows from the principle, that each one is the agent of the whole. But his agency extends only to such acts, as are incidental to the carrying on the business of the firm, and not, as I think, to the appointment of a trustee to close up the business, and distribute the proceeds of the partnership effects in unequal proportions among the creditors, and thereby exclude the other partners from participating in the distribution, or in the decission of the question, in regard to what creditors should have a preference, if any.

In *Pierpoint* v. *Graham*, 4 Wash. C. C. Rep. 232, Judge Washington evidently inclined to the opinion, that one partner had no such inherent authority, arising out of the partnership, as would enable him to assign the partnership effects in such a manner as to terminate the partnership, though he did not find it necessary to express any decided opinion upon the question. In *Hitchcock* v. *St. John*, 1 Hoffm. Rep. 511, it was held by the Vice Chancellor, that no authority resided in one partner, to make a general assignment to a trustee, giving preferences to particular creditors of the firm. It was considered, that such an assignment superseded all the business of the firm, as such, and took from the control of each of the partners all the property, with which the partnership business was conducted, and was of itself a virtual dissolution of the partnership. The transfer of property by one partner to an acknowledged creditor is within his powers, as incidental to the business of the firm ; and this is a power probably necessarily surviving, after a

dissolution, in whatever way that shall have been brought about. But upon an assignment of the property to a trustee, a complication of duties and powers is involved. One partner thereby appoints an agent to control and dispose of the whole business, of whose integrity, capacity and fitness he alone is the judge. In *Havens* v. *Hussey*, 5 Paige 30, this point came directly before the Chancellor, and he held that one partner had no such implied authority.

In the case of *Egberts* v. *Wood*, 3 Paige 317, the assignment was direct to the preferred creditors, in payment of their debts. So in *Mills* v. *Barber*, 4 Day's Rep. 428, the assignment was direct to a creditor of the firm, to secure the payment of his debt. In the case of *Harrison* v. *Sterry*, 5 Cranch 289, the complainant claimed title, as assignee, under an assignment executed by Robert Bird, one of the firm of Bird, Savage & Bird, who did business at New York under the firm of *Robert Bird & Co.*, and at London under the firm of *Bird, Savage & Bird.* Robert Bird was the only partner, who resided in this country, and he had necessarily the whole business of the firm in the United States committed to him. The assignment was only of a *certain specific portion* of the partnership property, for the purpose of *raising funds to carry on the business of the firm, and to save their credit.* Though, under the particular circumstances of this case, it was held, that Bird had power to make this assignment, yet this, in my view, is far from holding that an assignment of the whole partnership effects, by one partner, to a trustee, to wind up the business and distribute the avails among preferred creditors, is valid. I understand my brother Redfield fully to concur in the opinion, that Moulton had no implied authority, as a partner, to make the assignment in question; while the other members of the court, now present, are not prepared, at this time, to adopt that opinion.

The assignment is very inartificially drawn; and probably *haste* was somewhat necessary, that it might be prior in time to the attachment. The words are, " we assign and surrender to Samuel Ford, as our assignee, the possession of all the wool," &c. The description of the property intended to be assigned is of the most general character, being "all their wool, cloths, &c., in their factory at Bridgewater and at Woodstock, and all other property, which they owned or possessed in said towns." There is no schedule of

the property annexed to the assignment, and no estimate of its value. There is no list of the names of the preferred creditors, or schedule of the sums due to them; but they are referred to as being brought under different classes, and designated in general terms.   It is to be inferred, from the face of this assignment, that Moulton & Hutchinson were greatly insolvent; and we are to understand it as a general assignment of all their effects.   There is no allusion in the assignment to the fact that they were owners of property in other towns, not designed to be embraced in this assignment, and we are not to *intend* it,—and especially, as it appears from the recitals in this assignment, that it was made " to save a great sacrifice and waste of property."

There is no pretence that this assignment makes a provision for all the creditors of Moulton & Hutchinson.   Certain executions, and certain debts, upon which attachments had been issued, and which had been levied upon a portion of the property assigned, were first to be paid, and then the assignment provides, that the residue of the property shall be applied to the paying of *other debts*.   The workmen, and such as may have paid them, are first preferred, and then such as may have signed and endorsed notes, as surety for the firm, which were still outstanding, or such as have sold them wool. There is no provision that the *surplus* shall be paid to the general creditors; and though the assignment does not provide that the trustee shall pay the *surplus*, if any, back to the debtors, for their use, still there would be a *resulting trust* for the benefit of the debtors, if this assignment is sustained; and its performance would be equally *imperative* upon the trustee, as if the surplus had been expressly reserved in the assignment.

Though probably the better opinion is, that the want of schedules, annexed to show the particulars of the property assigned, and the names of the creditors, and the amount of debts due them, is not *conclusive evidence of fraud,* so as to render the assignment inoperative upon its face, yet it becomes a more important enquiry, to determine what shall be the effect of a *resulting trust,* apparent upon the face of the instrument, which may enure to the benefit of the debtor, to the expense of the creditors.   It has been supposed, that, though a trust be reserved in the deed to the use of the debtor, yet if the deed was not made *intentionally* to *delay, hinder* and *defraud*

Dana, Adm'r, *v.* Lull.

*creditors,* such a reservation would not affect the residue or main purpose of the assignment. The case of *Estwick* v. *Caillaud,* 5 T. R. 420, also *Riggs* v. *Murray,* 2 Johns. Ch. Rep. 580, and *Murray* v. *Riggs,* 15 Johns. 571, strongly countenance such a position; but we think such a reservation should have a more decided effect, and that sound policy requires that it should render the whole assignment *fraudulent and void.* This we understand to be according to the later authorities. *Mackie* v. *Cairns,* 1 Hopkins Rep. 373. *S. C.,* in the Court of Errors, 5 Cowen 566. *Harris* v. *Sumner,* 2 Pick. 129. *Burd* v. *Fitzsimons,* 4 Dallas 77. *Passmore* v. *Eldridge,* 12 Serg. & Rawle 198. The case of *Grover* v. *Wakeman,* 11 Wend. 187, which was much discussed, goes even farther than this. It was there held, that, to enable a debtor, by an assignment of his property in trust, to prefer one creditor, or a set of creditors, to another, he must devote the *whole* of the property assigned to the payment of his debts, and that the assignment must be unconditional, without any *reservation* for his benefit, or any clause in it, making the preferences to depend upon the preferred creditors executing releases to the debtor of all claims against him. Though, as has been already remarked, there would be but an *implied* trust, in this case, resulting to the debtors, for the surplus, which might remain in the hands of the trustee after the payment of the creditors specified in the assignment, yet its legal effect upon the assignment must be the same as if expressly reserved.

It is no answer to this objection to the validity of the assignment, that, in the end, it turned out that there was not sufficient property assigned to pay the preferred creditors. The objection goes to invalidate and render void the assignment upon its face. If there had been an express reservation of the *surplus,* after payment of preferred creditors, it by no means follows, that there would, in the end, be a surplus. There might be, and this entitles the other creditors to pronounce the assignment *per se fraudulent,* and to act at once accordingly.

If it should be said that the *surplus,* after the payment of the preferred creditors, might be reached by the general creditors; while in the hands of the assignee, by the trustee process, still the effect would be, to effectually lock up the surplus property, until the preferred creditors were paid, and thus materially *hinder* and *delay* the

general creditors in their legal remedies to enforce satisfaction of their debts, and compel them to look to a person, to whom they had not given credit. When a debtor fails, from whatever cause, the *whole* of his property, in moral justice, belongs to his creditors; but there is a class of cases, which permit him to prefer, in payment, such creditors as he shall please, upon a general assignment of all his effects, provided the whole is devoted to his creditors; and this seems to be giving him power enough. But these cases are quite distinguishable from one, in which, as to some creditors, there was no provision, and no attempt to dispose of the *whole* property for the use of creditors, but a reservation of what might be a *surplus* after the payment of certain specified creditors, whether such reservation was express, or resulted to the assignor as an implication of law. In such case the act becomes *fraudulent,* and it is not competent for the debtor to prescribe terms to his creditors; but the law is open to them, and they are allowed the right of pursuing their debtor in the way which the law points out, without any obstruction from such an assignment.

The result is, that, with these views, a majority of the court concur in reversing the judgment of the county court and remanding the cause to that court.