AARON GODDARD v. BRIDGMAN HAPGOOD, AND COLLINS & HOLDEN, AND SLACK & MARSH, TRUSTEES.

*Trustee process. Assignments.*

An assignment, which does not provide for all the creditors, before the residuum is to be paid back to the assignor, is void.

And it was also held, that an assignment, by partners, which gives preferences to the separate partners, for debts they have against the partnership, before paying the other creditors of the partnership, is void.

A trustee is not liable for property, as trustee, taken out of his hands by the creditor, by virtue of an execution, in the same suit, against the principal debtor, though the execution should turn out to be premature and void, and the officer a trespasser.

Where the trustee had actually paid or assumed liabilities for the principal debtor, before the service of the trustee process, and has in hand, as security, personal property and real estate belonging to the principal debtor, *it was held*, that the trustee could not be compelled to look to the real-estate for his security, unless guilty of intentional misconduct.

TRUSTEE PROCESS. The County Court, May Term, 1851,— PIERPOINT, J., presiding,—found the facts set forth in the disclosures of Collins & Holden and Slack & Marsh, to be true. (The principal defendant having made an assignment to Collins & Holden, and he, with one Carlisle, having made an assignment of the effects of the firm of Hapgood & Carlisle to said Slack & Marsh. The defects for which the assignments were held void, sufficiently appear in the opinion of the court.) That the assignment to Collins & Holden, and to Slack & Marsh, set forth in the disclosures, were in fact executed and received in good faith, without any fraudulent intent. But the court, as matter of law, held that the said assignments are void, for defects apparent upon their face.

The court also decided, that the executions, which were issued in this suit, and in a suit in favor of one E. Robinson, against the principal debtor, and named in the disclosure of said Collins & Holden, (the suit in favor of said Robinson being still pending in the County Court, against said trustees, Collins & Holden,) upon which executions property was sold to the amount of 547,59, are void. The court also found in the hands of the said Collins, (said Holden having deceased,) the sum of $208,86, in addition to the

said $547,59, taken upon said executions; and adjudged said Collins chargeable as trustee, in this suit, for said sum of $208,86, and for the said $547,69, and therefore held said Collins trustee for the sum of $756,45. To which decision the said Collins excepted.

And the court decided that said Slack & Marsh are not chargeable as trustees. To which plaintiff excepted. To the decision that the assignment to said Slack & Marsh is void, the said Slack & Marsh excepted.

(The disclosures and assignments being quite.lengthy, it is not thought advisable to report them, as the material part appears in the briefs and opinion.)

*Washburn & Marsh* for trustees.

I. The assignment to Collins & Holden conveyed certain real estate and personal property, all of which was particularly described.

The *trust* was—1st, to pay certain specified creditors of the assignor—2d, to divide the surplus, if any, among *all the creditors* of the assignors—3d, to pay the remaining surplus, if any, to the assignor.

This assignment, having been executed previous to the enactment of the statute of 1843, rendering void all general assignments in trust for creditors, is to be held not only valid, but executed for a purpose highly meritorious, according to the decision of this court in *Hall* v. *Dennison et al.*, 17 Vt. 310, unlesss impeached for *fraud*.

The objection taken is, that the assignment reserves a *resulting trust* in favor of the assignor, without first providing for *all* of his creditors. And we admit, that if it requires and receives this construction, it must, under the decisions of this court in *Dana Admr.* v. *Lull*, 17 Vt. 390, and *Britnell* v. *Warren and Trustee*, Windsor Co., June T., 1851, be held void.

The clause relied upon by the plaintiff, to sustain this view, is in these words, after specifying the preferred creditors—" *And af-* " *ter paying and discharging the above demands in full, if there* " *shall be any surplus, said surplus is to be applied to the payment* " *of all the said B. Hapgood's individual debts, by the said T. B.* " *Collins and Joel Holden, in proportion to their respective de-* " *mands.*"

Goddard *v.* Hapgood & Trustees.

1. These trustees are not to be affected by anything contained in the disclosure of Slack & Marsh. If the plaintiff would rely upon any facts, for the purpose of charging Collins, which do not appear upon the face of the assignment, or of the disclosure of Collins & Holden, he should have called them out by interrogatories, or have filed allegations and had them found by a jury. *Downer* v. *Topliff and Tr.*, 19 Vt. 399.

It does not appear from the assignment, nor is it stated in the disclosure of Collins & Holden, nor found by the bill of exceptions, that Hapgood, at the time of executing this instrument, owed any debts, except those for which he was severally liable. Hence the word "*individual*," in the clause above recited, should be treated as surplusage. His "*individual*" debts, in this situation of his liabilities, can only mean *all* his debts.

2. Neither will the court *intend*, from the use of this word, that Hapgood owed debts, which were not his "*individual*" debts. There is no *fact* stated, which will warrant such an *intendment*.

All the debts, which a man owes, are his "*individual*" debts; and if the word will admit of *two* significations, one of which will defeat the deed and the other sustain it, the court, in the absence of all testimony, are bound to apply the latter. *Thrall* v. *Newell,* 19 Vt. 206. Co. Lit. 42. Chit. on Cont. 80, 81, n. (*v.*) Broom's Leg. Max. 238, et. seq.

If words are used, which, in their most general sense, would render a deed illegal, their operation will be restrained, to give effect to the deed. *Harrington* v. *Kloprogge*, 4 Doug. 7, (26 E. C. L. 190.) *Archibald* v. *Thomas*, 3 Cow. 284. And the converse of this rule is equally true; a more enlarged application should be given to the words, if illegality would attach to the instrument by giving them a more limited sense. *Parkhurst* v. *Smith*, Willes, 332. Hob. 277.

If the court, from an examination of the whole instrument, and from a consideration of all the attending circumstances properly before them in the case, can determine, with reasonable certainty, what was the *intention* of the parties, all doubtful words and phrases are to be so construed, and all intendments made, as to effectuate that intent. *Goodtitle* v. *Bailey*, Cowp. 600. *Pingrey* v. *Watkins*, 15 Vt. 489. *Beach* v. *Haynes*, 12 Vt. 15.

The instrument purports, upon its face, to be a transfer of the

property of the assignor in trust for the payment of his debts.—
This, in the case of *Hall* v. *Dennison et al.*, has been held an act
of duty, meritorious in its nature, and entitled to the favor of the
court. The court below have found, that both assignor and as-
signees acted in this, in good faith, honestly intending to carry out
the legal purpose of the instrument, and that the assignees have
only been prevented from so doing by the act of this plaintiff in
taking the property from their possession. They must therefore
have intended to make a *good* assignment. And the construction
claimed will support the deed, will give effect to their intentions,
and protect property, while the other " is a subtlely, to overturn
property, and to defeat the intention of parties, without answering
any one good end or purpose whatsoever." *Pugh* v. *Duke of
Leeds,* Cowp. 714. *State* v. *Trask,* 6 Vt. 364.

At common law, if there is held to be a defect in this part of
the deed, it would only avoid this clause, leaving the deed good as
to the preferred creditors. Hob. 14. 1 Mod. 35. *Hyslop* v. *Clarke,*
14 Johns, 465. The plaintiff, then, must rely upon the *statute,*
which declares deeds void, which are executed with *intent* to avoid
any debt, &c.; but to bring the case within the statute, the *intent*
is material to be proved ; and although this may be *presumed,* per-
haps, where there is a direct reservation to the debtor, yet it can-
not be sufficient to *presume* it, from *presuming,* from the use of a
word of doubtful signification, that the assignor *intended* such res-
ervation. This would be basing a presumption upon a presump-
tion, which is not allowable. *Admr. of Hammond* v. *Smith,* 17
Vt. 231.

3. But if the fact were held established, that Hapgood, at the
time of executing this instrument, was a member of an insolvent
co-partnership, owing debts, the legal construction of this instru-
ment would be to create a trust in favor of all the co-partnership,
as well as separate creditors, and so it would be valid in law.—
*Individual* debts are those for which a party is *individually* liable,
and which can be levied upon his *individual* property. They in-
clude, at law, all joint and several obligations. And in equity,
where alone this instrument can be enforced, and in reference to
the rules of which it is to be construed, they include all *joint bonds,*
which are *there* held to be *several,* Each partner is responsible,
*in solido,* for all the debts of the firm. Both at law and in equity

the partnership creditors may enforce payment of their debts from his separate property. *Bardwell* v. *Perry et al.*, 19 Vt. 292.— *Reed et al.* v. *Shepardson*, 2 Vt. 125. And it is not necessary that they should first exhaust the partnership property. *Wilkinson* v. *Henderson*, 1 Mylne & Keene, 582. [7 Cond. Ch. R. 173.] *Devagnes* v. *Noble*, 2 Rus. & Mylne, 495. [13 Cond. Ch. R. 139.]

4. Upon this instrument, a court of equity, upon a bill brought by the partnership creditors, would restrain the assignees from paying any portion of the surplus, after payment of the preferred debts, to Hapgood, until the partnership creditors were paid. The consideration expressed is sufficient to vest the legal title in the assignees, and the trust is sufficiently declared, although the words " *individual debts*" are used, to justify such decree. If so, the instrument cannot be declared void for defects upon its face.

5. But if the assignment should be held void *in law*, the trustees would be liable, as in any other case, for the balance of property intrusted to them by the principal debtor, and not disposed of or accounted for previous to the service of the trustee process, deducting offsets.

They cannot be held liable for the *real estate.*

The disclosure shows that they have received—

| | | |
|---|---|---|
| Personal property, | | $927,47 |
| Increase and advances, | | 365,50 |
| Increase of farm in 1843, | | 89,14 |
| Do.   do.   1844, | | 43,12½ |
| | | $1,425,23½ |

And from this they may deduct, for

| | | |
|---|---|---|
| Pasturing sheep, | $30,00 | |
| Repairs of carriages, &c., | 6,25 | |
| Taxes 19,13; washing and shearing sheep, 11,00, | 30,13 | |
| Paid towards preferred debts previous to service of trustee process | 300,00 | |
| Amount of Collins' claim (and interest,) | 302,40 | 668,78 |
| | | $756,45½ |
| Of which there has been levied upon and sold on execution by plaintiff, | | 547,59 |
| *Balance in trustees' hands,* | | $208,86½ |

The execution on which the property was sold by the plaintiff,

was issued in the suit now at bar; and the court below held it void, and adjudged Collins chargeable for that amount, upon the ground that the plaintiff having summoned Collins as trustee, could not take the property out of his possession, and was liable for so doing, in an action of trespass, now pending in the County Court; whether the court below were right in this, is a question to be determined by this court. *Jones* v. *Spear and Tr.,* 21 Vt. 430. *Downer* v. *Dana et al.,* 22 Vt. 22.

II. *Slack & Marsh* are not chargeable, even if the assignment to them, of April 12, 1843, is held void. The situation of the funds in their hands is shown to have been as follows:

| | | |
|---|---|---|
| Personal property assigned, | $1,321,30 | (Schedule A.) |
| Avails and rent of real estate, | 961,99 | "        B.) |
| Property not included in assignment, | 161,53 | "        C.) |

| | |
|---|---|
| Amount of property, | $2,444,82 |
| Deduct amount of labor, &c., in carrying on the premises, (Schedule E.) | 914,03 |

| | |
|---|---|
| Leaves amount of trust fund, | $1,530,79 |
| Deduct amount of claims held personally, by the trustees against the principal debtor, viz: | |
| I. & H. Marsh, (class 1 of assignment) | 267,00 |
| Levi Slack, (class 2 of assignment) | 175,00 |
| Levi Slack, of $1,800 note, amount shown by schedule, | 1,175,66 |

|  |  |
|---|---|
| | $1,617,66 |

Leaves a balance against trust fund of $86,87, besides trustees' charges for services, and deductions on the *estimated* value of property.

But this assignment is valid. *Murray* v. *Riggs,* 15 Johns. 571.

*S. Fullam* for plaintiff.

The assignments, under which each of the trustees claim to hold the property from this plaintiff, are alike in many particulars, and will be discussed together as far as they are so.

They both provide for the re-payment of the *residuum* to the assignors, without providing for the payment of *all* their just debts.

Goddard *v.* Hapgood & Trustees.

Hapgood's assignment provides for the payment of his *individual* debts only.

Hapgood & Carlisle's provides for the payment of their company debts, due in the company name only.

I. We insist that these provisions render both of these assignments absolutely void.

1. Because there is a. resulting trust for the benefit. of the assignors, without paying *all* their joint debts.

2. Individual creditors can receive nothing from the company property, even after the company. debts are paid, nor can the company creditors receive any thing from the individual property of Hapgood, even though a residuum remain, but that by the terms of the assignment must go to Hapgood.

3. This arrangement *may* lock up the property from those who have a right to take it for the payment of their debts, and by the current of all the authorities, renders the assignment void. *Dana Admr.* v. *Lull,* 17 Vt. 390. *Crosby* v. *Hilyar,* 24 Wendall, 280.

There are objections to the assignment of Hapgood & Carlisle which do not attach to the other.

1. The giving of the $1800 note on the day of the assignment, for the consideration disclosed, with the intention then to sue it and attach property to prevent others from doing so, and then providing for its full payment in the assignment, is a palpable fraud.

2. The assignees themselves are among the creditors preferred in the assignment.

II. If the assignments are void, it has never been seriously contended that the assignees were not trustees; but the amount has been a matter of controversy.

Slack & Marsh insist that they have the right to have the amount of the $1,800 note deducted from the amount of personal property in their hands.

We insist they have no such right. Their disclosure shows that the property was placed in their joint possession, and if they had a *bona fide* demand, jointly due to them from Hapgood & Carlisle, they might deduct it, but not their separate demands. Compiled Statutes, 263, § 51.

If the note is void as against creditors, then creditors cannot be prejudiced by it.

If the note be not void, still it affords no rule for any deduction;

it was not given for the sum of $1,800, due from the assignors to Slack, but for a liability then contingent, or which he was thereafter to incur by way of being surety for them; and if he would have a deduction on account of the note, he must show how far he became liable before the service of this process upon him, and how much he has actually paid thereon.

A large amount of real estate, much more than enough to secure Slack for his liabilities, was deeded to him, and he should be referred to that for his security.

Slack & Marsh disclose that they received personal property of the value of            .            $1,320,30

Also,                        '            $161,53

                                       $1,481,83

*Vide* Schedules A. and C. Besides numerous small sums, and the use of the real estate, consisting of farms, mills, &c., valued at $3,300.

A large share of the personal property had been sold in 1845, and interest should be added.

Company creditors may attach the individual property of any of the partners to secure their debts.

Individual creditors may also attach the company property to secure their debts. *Reed & Root* v. *Shepardson*, 2 Vt. 120. *Bardwell* v. *Perry et al.,* 19 Vt. 292.

III. We do not contend that Collins & Holden are trustees for the property taken from them on the executions, unless these executions are void.

The executions are clearly not void. They were founded upon good and valid final judgments against the defendant, and rendered upon default.

But suppose the executions issued prematurely; *still* they are not void, but are good until set aside, and this the trustees can never do. *Stamford* v. *Barney*, 1 Aik. 321. *Fletcher* v. *Mott*, 1 Aik. 339. *Vandakin* v. *Soper*, 2 Aik. 245. *Allen* v. *Carpenter*, 7 Vt. 397. *Spring* v. *Ayer and Tr.,* 22 Vt. 516.

We insist that when a final judgment is rendered in the County Court against the defendant, and the trustees carry the question of their being trustees to the Supreme Court, it does not carry the judgment against the defendant with it. If so, this court should

Goddard *v.* Hapgood & Trustees.

affirm the judgment of the County Court, which we do not find any statute authorizing this court to do.

We think this court should remand the cause to the County Court for execution ; but as this is a mere question of practice, and the plaintiff can have but one satisfaction, perhaps it is not a question of much importance.

Collins & Holden admit that they had personal property to the amount of

|  |  |
|---|---|
| Collins & Holden admit that they had personal property to the amount of | $927,47 |
| Received from sheep and advances, | 365,50 |
| Avails of real estate in 1843, | 89,14 |
| Do.          do.          1844, half, | 43,12 |
|  | $1,425,23 |
| Deduct property taken on execution, | 547,59 |
| Leaves | $877,64 |

Interest to be added.

The opinion of the court was delivered by .

REDFIELD, Ch. J.  It is said, in some of the cases upon this subject, that Chancery cannot interfere to compel the trustee to make a distribution of the funds in his hands, contrary to the express terms of the deed, but that when there is a fair opportunity to introduce construction, that court will compel a distribution to all the residue of creditors, not expressly provided for, if by the terms of the deed they are not expressly excluded.  1 Am. Leading Cases, 100, referring to the decisions in South C.

But after the most patient examination, which I have been able to give this case, both upon the former argument, and at the present term, notwithstanding we have felt a disposition to give this class of contracts the same favorable consideration which we do all other contracts, we have not been able to convince ourselves, that the provision for the residuum of the property assigned, to come to the assignor, after the payment of all his "individual debts," could fairly be held to extend to *all his debts*.  If that could be regarded as an allowable construction of the contract of assignment, there is no insurmountable impediment in the way of upholding it, as it seems to us.  The provision in regard to the disposition of the property not being intended, as we think, to give the assignor an absolute and irresponsible direction, in regard to

time, but only a reasonable and legal discretion, which is always implied in all trusts, whether expressed or not, and is under the control of the Court of Chancery, and may be implied in their discretion.

But the express reservation of the residuum, after paying all the " individual debts" of the assignor, seems to us to have been adopted *de industria.* And although capable, in literal interpretation, of bearing an import consistent with no exclusion of partnership creditors, inasmuch as partnership debts are equally individual debts, yet it seems to us, such is not a fair construction of the words used, with reference to the subject matter and the attending circumstances. The word individual, as applied to debts in this connexion, is evidently a correlative. And, as such, it could ordinarily be only an antithesis to joint debts, or partnership debts. And for this purpose, I think it is competent to take into the account the fact, that the assignor owed such debts, if that fact is shown in the case, or even that in connexion with, and as part of the same transaction, he had joined with his partners in making an assignment of the partnership property, to secure partnership creditors —under all these surrounding indicia of the obvious import of the term " individual " in its connexion, it seems to us unreasonable to say, that we will, even for the sake of upholding a contract, *ut eis magis,* declare, that it shall have only its literal import, as synonymous with *my* or *mine.* It seems more in accordance with the cardinal rule of construing contracts, to give it such a meaning as will not obviously defeat the clearly expressed intention of the assignor.

Giving to the assignment this interpretation, the case of *Dana Admr.* v. *Lull,* 17 Vt. 390, seems to be decisive of the case, so far as the assignment of Hapgood is concerned. It is true, that the assignment, in the case of *Dana* v. *Lull,* might be regarded as fatally defective in many other particulars, besides reserving the residuum to the assignor, by way of resulting trust, before making provision for all the creditors ; but the case was decided upon this ground chiefly. And a case, if it is authority at all, is only so, for the ground upon which it was decided. There may be many other grounds upon which it might have been decided, far more satisfactorily, but it surely could not be regarded as authority upon a ground upon which it was not decided, or for a principle which

was in no sense recognized by the court, in the decision. We must then, we think, to give this first assignment a reasonable construction, and follow the published decisions of this court, regard the assignment as void.

The only other question, which appears, by the exceptions, to have been decided by the County Court, in regard to the liability of Collins, is, that he is liable for the property taken out of his hands, by virtue of an execution in this same suit. It is claimed that the execution being premature, is void, and so the officer a trespasser, and therefore the transaction is to be wholly disregarded. There are doubtless many questions involved in that matter, which do not properly arise here, and which of course we would choose not to determine. We are satisfied the trustee should not be held liable for property taken out of his hands, under these circumstances. If the execution was irregular, or void, the party will still have his redress, for the actual damages. But he cannot be thus held liable for property which this same creditor has already taken from him, upon the ground that he may recover its value. This would be to encourage circuity of action, which courts will not do. It may deserve consideration how far the party is to be held liable for executing final process, which is in its nature judicial, until it shall be set aside by the court from which it issues. But that we have no occasion to determine here, perhaps.

The grounds upon which the court below came to the sum of $208,86, with which they charged Collins, is not stated, nor is it stated that all the facts upon which they proceeded are contained in the disclosure. We could not therefore revise the decision of that court, in regard to that. It is very probable they came at it, in the manner stated in the brief of defendant's counsel, as the sums agree, which would be a rare coincidence, unless the computation was identical. But we have so repeatedly decided, and declared in the reports, that this court cannot revise the decisions of the County Court, in trustee cases, unless that court report the facts, and all the facts, upon which they decide the case, that it seems needless to say more.

We do not remand trustee cases to the County Court, unless it is apparent upon the papers, that a further inquiry in regard to the facts is indispensable to the justice of the case. The result in

XXV.        24

regard to Collins then is, that upon this bill of exceptions, he is liable only for the lesser sum of $208,86.

II. In regard to the assignment by Hapgood and Carlisle, it would seem to be liable to the objection of not providing for all the creditors, before the residuum was to be paid back to the assignors; but there is clearly another fatal objection, that it gives, or attempts to give, preferences to the separate partners, for debts they have against the partnership, before paying the other creditors. This could in no sense be allowed, without violating every principle of justice and fair dealing. If the principle is allowable at all, it is to the extent of securing the whole assets to the use of the separate partners, to the entire exclusion of the general creditors.

But this question becomes practically of no importance, inasmuch as the court found the trustees not liable, even upon the basis of holding the assignment void. And although the particular grounds upon which the court proceeded are not shown in the exceptions, as it should be, if it was desired to raise any question of law, yet from examination of the facts, as stated in the disclosure, it seems to us they were properly discharged.

The note which was given to Slack for $1,800, to secure him for certain liabilities which he had assumed for the firm, and which it was provided by the assignment should be paid, seems to us not necessarily to fall with the assignment. And although not all due, if Slack did not attempt to justify it as wholly a *bona fide* debtor beyond what he had assumed, it would be a good ground of allowing the trustee to retain for his own security, as to what he had actually paid, or assumed before the service of the trustee process.

We do not think he could be compelled to look to the real estate for his security. This will not be required, unless when there has been intentional misconduct of the trustee.

The judgment of the County Court, as to Slack and Marsh, affirmed. As to Collins, reversed, and judgment that he is liable only for $208,86.