## CLAPP *v.* ROGERS.

In a trustee suit, the plaintiff, after service of the writ upon the trustee, may attach the property of the principal defendant in the trustee's hands, but such attachment will discharge the trustee, *pro tanto.*

The plaintiffs, after having caused a trustee writ to be served, attached the goods in the hands of the trustee, on account of which they sought to charge him. A previous attachment had been made by another creditor, and the plaintiffs' was made subject to that. Upon the sale of the goods by the officer, the sum realized·was insufficient to pay the execution recovered in the suit upon the first attachment.—*Held,* that the plaintiffs, by their attachment, had discharged the trustee from all liability· as such on account of the goods.

FOREIGN ATTACHMENT. The following facts appear by the disclosure:

On the 14th day of December, 1857, George W. Rogers, the principal defendant, was the owner of a stock of goods in Dover, consisting of boots, shoes, some dry goods, fancy articles, &c., which he was selling at retail. On that day he sold the entire stock to Alpheus Rogers, the trustee, a cousin of his, having previously made an inventory of the same, for $1,617.25, being twenty-five per cent. less than the original cost; the basis of the bargain having been that the trustee should pay for the goods at that rate.

For this $1,617.25 the trustee gave his note to the principal defendant, payable on demand, with interest, and at the same time a verbal agreement was made between them that the trustee should pay a hundred dollar note to the Dover bank, which the trustee had signed with the principal as surety, and should also pay Mrs. Quint, the mother of the principal defendant, a debt due her of about $1,300. These two sums being taken out of the $1,617.25, the balance, whatever it might be, was to be paid to the principal.

Mrs. Quint knew nothing of this agreement, and never assented to it.

So far as the public were concerned, no change was made in the situation or appearance of the goods in the store. Both the principal and trustee made sales and put the money into the drawer. But the disclosure does not show any positive intent to defraud creditors.

On the 17th day of December, three days after the sale of the goods to the trustee, the plaintiffs in this suit caused their writ to be made and served upon the trustee. On the evening of the same day, the goods were attached and taken possession of by another officer, on a writ in favor of Mrs. Quint against the principal defendant. After this attachment was made, these plaintiffs, on the same evening, took their writ from the hands of the officer who had served it upon the trustee, and gave it to the officer who had made the attachment, with directions to attach the goods on their writ, and he made an attachment accordingly, subject to the previous attachment.

The goods were afterwards sold under the statute for the sale of personal property upon *mesne* process, for a sum insufficient to pay the execution recovered in the Quint suit.

After the goods were taken by the officer upon both attachments, the note for $1,617.25, which the trustee had given to the principal for the goods, was surrendered to the trustee; and the money, being about ten dollars, which was received for sales during the three days, was taken by the principal defendant and kept by him.

*Hamlin*, for the plaintiffs.

If the court are of opinion that the sale was fraudulent in fact, the trustee may be charged for the specific goods, they having been in his hands at the time of the service of this writ upon him. The service created a lien upon the goods. *Wadleigh* v. *Pillsbury*, 14 N. H. 576; *Wolcott* v. *Keith*, 22 N. H. (2 Fost.) 205; *Aldrich* v. *Woodcock*, 10 N. H. 103; *Clark* v. *Courser*, 29 N. H. (9 Fost.) 170; *Rollins* v.

Clapp *v.* Rogers.

*Robinson*, 35 N. H. 382; *Chapman* v. *Gale*, 32 N. H. 145; *State* v. *Johnson*, 33 N. H. 463.

An attachment, and taking the goods of the defendant out of the hands of the trustee after service of the trustee process, does not discharge the trustee. *Dispatch Line of Packets* v. *Bellamy Manufacturing Company*, 12 N. H. 238; 10 N. H. 103.

2d. If the sale was *bona fide*, then the trustee is not chargeable for the goods specifically, but for the note. And upon this ground we mainly rely. The note was an absolute, unconditional and present debt at the time of service of this process on the trustee, having for its consideration the sale and delivery of the goods. And the plaintiffs have not deprived the trustee of its consideration by their attachment of the goods. The attachment effected nothing; the goods being all sold to satisfy the first attachment.

*Wheeler*, for the trustee.

There is nothing in the disclosure to show that the trustee acted in bad faith. As the sale was in good faith, it was valid. The title passed, and the goods became the property of the trustee. It cannot, therefore, be said he had in his hands the goods of the principal defendant.

But the plaintiffs seek to charge him by reason of his indebtedness to the principal, on account of his purchase of the goods.

Whatever indebtedness is disclosed, is based upon these goods as the consideration of that indebtedness, and it is well said that "the creditor should not and could not be paid twice out of the same property."

By the attachment, they repudiated the contract, and said the goods were not the goods of the trustee, but of the principal defendant. And by thus repudiating the contract they have absolved the trustee from his obligation under the contract; certainly so far as these plaintiffs are concerned. *State* v. *Johnson*, 33 N. H. 463.

But it is said there was a former attachment, and the trustee is discharged only so far as the goods so taken were applied to satisfy their debt.

But we understand it was the attachment which discharged the trustee, and not the subsequent application of the proceeds of the goods, and their attachment extended to all of the goods.

EASTMAN, J.    Although there was no intent on the part of the principal and trustee to defraud the creditors of the former, by the sale of the goods as set forth in the disclosure, yet it is quite apparent that the goods could be taken by the creditors of the vendor as his property, and that a jury, under the instructions of the court, would pronounce the sale to be fraudulent as to creditors.    *Kendall* v. *Fitts,* 22 N. H. (2 Fost.) 1 ;  *Coburn* v. *Pickering,* 3 N. H. 415 ;  *Trask* v. *Bowers,* 4 N. H. 309 ;  *Clark* v. *Morse,* 10 N. H. 236.

But for the purposes of this decision it is immaterial, in the view which we have taken of the case, whether this sale was a valid one or not.    If it was fraudulent, then the plaintiffs have, by their attachment, taken from the possession of the trustee the goods of the principal which were in the hands of the trustee, and on account of which he was to be charged.    If the sale was not fraudulent, either in law or by intent, then the plaintiffs have taken from the trustee the property which went to make up the consideration of the note, and of the indebtedness of the trustee to the principal.    Having thus taken the goods from the trustee's hands, can the plaintiffs in either view charge the trustee ?

Foreign attachment is an equitable proceeding, and in arriving at a decision, the equities between the parties are to be considered.    *Leland* v. *Sabin,* 27 N. H. (7 Fost.) 74 ; *Boardman* v. *Cushing,* 12 N. H. 114.    If this sale were a fraudulent one, the trustee would be chargeable for the

goods of the principal in the trustee's possession; but those goods the plaintiffs, by legal process, have taken from his hands, and in the eye of the law have applied the same to the payment of their own debt against the principal. They thus take from the trustee the very property on account of which he is to be charged, if at all, and apply that property to their own advantage. Under such circumstances there could be no equity in charging the trustee upon that ground.

It is no answer to this position that, upon the sale of the goods by the officer, a sufficient sum was not realized to satisfy the first attachment. The plaintiffs knew of this attachment; they knew the amount of the debt upon which it was founded, and the quantity of the goods taken and their cost; and they made their attachment with full means of knowledge of all the facts connected with the business. By their attachment all of the goods were, in law, as effectually taken as by the first attachment; and had that failed, or the debt been settled, or the goods sold for a larger amount, the plaintiffs might have had their debt satisfied out of the goods. The course pursued by them in attaching the goods took from the trustee all personal control over the property. The officer returns that he has attached the goods in the schedule, &c., subject to the former attachment. He held the goods by both attachments, and the trustee was as effectually deprived of all power over them by the last attachment as by the first. He was driven to the alternative, either to surrender his claim to the goods, or bring an action of trespass against the officer for taking them. He chose the former course; and in this aspect of the character of the original sale the plaintiffs cannot complain of his choice, for the trustee has acquiesced in their position, and yielded up the goods, as those of the principal, to their control. He cannot be required to prosecute the officer as a trespasser for taking the goods, that the avails, if a recovery

Clapp *v.* Rogers.

should be had, might go to the plaintiffs; for the officer was but the servant of the plaintiffs, and made the attachment by their direction, and they must be held to have taken the goods at their own risk. By the attachment they took from the trustee all power or control over the goods, and thereby discharged him from all liability to them on that account.

If the sale is to be treated as a valid, *bona fide* transfer of the·property from the principal to the trustee, then the goods formed the sole consideration of the note given by the trustee to the principal. The plaintiffs by their attachment took the goods from the trustee, and, as between them and the trustee, destroyed the consideration of the note. If the trustee is to be charged in this aspect of the case, it is because of his indebtedness to the principal; but how can he in equity be charged for the benefit of the plaintiffs on account of this indebtedness, when they themselves have taken away its consideration?

In *Goddard* v. *Hapgood*, 25 Vt. 351, it was held that a trustee is not liable for property, as trustee, taken out of his hands by the creditor, by virtue of an execution in the same suit against the principal debtor, though the execution should turn out to be premature and void, and the officer a trespasser.

In that case the learned chief justice *Redfield* says: "It is claimed that the execution, being premature, is void, and so the officer a trespasser, and, therefore, the transaction is to be wholly disregarded. We are satisfied the trustee should not be held liable for property taken out of his hands under these circumstances. If the execution was irregular or void, the party will still have his redress for the actual damages; but he cannot be thus held liable for property which this same creditor has already taken from him, upon the ground that he may recover its value. This would be to encourage circuity of actions, which courts will not do."

In *State* v. *Johnson*, 33 N. H. (2 Fogg) 463, the court say : " In the same suit the creditor, after summoning the trustee, might, it would seem, attach the property of the principal defendant in his hands, and hold it. The attachment taking the property out of the trustee's hands, would be regarded as the act of the plaintiff, and discharge the trustee *pro tanto*, and the property would be held under the attachment."

That was not the point of the decision in that case, but the *dictum* of the chief justice is directly in point here. The case from Vermont also sustains the principle, and such, we are satisfied, must be the law. A party cannot take from the hands of a trustee the property on account of which he seeks to charge him, without discharging him from all liability as trustee, by reason of such property, or any indebtedness founded upon it. He may elect which ground to take, either to attach the property or summon the trustee, but, so far as the same property is to be considered, he cannot hold it in both ways at the same time.

Had the plaintiffs chosen to rely upon the good faith of the sale from the principal to the trustee, its validity could have been tested by an action against the officer who made the Quint attachment ; and had the sale proved valid, the trustee would have been charged in this suit : but, having attached the property, and thereby taken it from the hands of the trustee, they must be held to have abandoned the trustee process, so far as the goods are to be regarded ; and there being no other ground, except the goods and the indebtedness growing out of them, by which to hold the trustee, he must be discharged.