The Chief Justice
delivered the opinion of the court.
This was an action of assumpsit commenced by attachment. Defendant traversed the grounds stated in the affidavit upon which the writ issued, and upon trial of this issue, a verdict and judgment were had against the, plaintiffs, from which they appealed.
On April 33, 1879, plaintiffs, by their attorney, filed an affidavit alleging the indebtedness of defendant, actually due, upon contract, and that the affiant “has reason to believe that said Lilienthal will fraudulently part with his property before judgment can be recovered against him.”
The defendant filed his traverse, denying on oath that he ever entertained an intention or performed an act indicating a purpose of fraudulently carrying away any of his property to injure or defraud his creditors, at and before the issuing of the attachment, or at any other time; that the allegations in said affidavit are untrue -in fact, and that the allegations of fraudulent intent on the part of defendant are utterly untrue and without foundation in fact.
Upon the issues joined a trial was had before a jury. A. M. Thrasher, for plaintiffs, testified that he had claims of plaintiffs in his hands against’ defendant, amounting to seven hundred and forty or fifty dolars, all past due in March last, that defendant admitted that the amount was actually due, that the claims were just, that he was insolvent and had no money, and wished plaintiffs to give him indulgence and he would try to pay up in the fall, that if plaintiffs would not press him he would make small payments from time to time. Witness proposed to take a mortgage, but defendant declined on the ground that it would ruin him, and he would not under any circumstances prefer a creditor; said he would go and see his brothers, at Palatka, in a few days, and thought he could borrow of them to pay his creditors in part, and then his creditors would wait till business revived. Defendant, within a day or two afterwards, went to Palatka and remained three or four days, and after he returned continually and studiously avoided witness, although he had promised to call and see him on his return. Just prior to that time, witness saw sacks of corn and bales of hay, which were shipped on the steamboats and received into defendant's store, marked and directed to E. S. White, who was defendant's clerk. Defendant and his clerk sold this merchandise just as they did other goods. The day, or the day after defendant returned from Palatka, defendant caused several loads of goods, provisions, and supplies to be hauled away from his store and carried to his dwelling house. Defendant made no payments as he had promised and shunned and avoided witness, and the hauling off the goods and selling goods that were shipped to his clerk, altogether, aroused his suspicions. Defendant bought goods on credit and sold exclusively for cash, he had not been paying debts, and various other creditors were after their money. Witness was informed that defendant was habitually gambling. He had been doing a “staving business,” selling for cash, and yet said he had no money with which to- pay creditors. On April 33, the day after the attachment was issued, witness ascertained that defendant had executed’ two mortgages on his stock of goods, which were put on record, yet he remained in possession selling goods from his store as usual, and hauled several loads of goods to his house. He kept a store of general merchandise.
Copies of the mortgages given by defendant were put in evidence. These mortgages were respectively for the sum of $913.75, to B. L. & L. Lilienthal, of Palatka, and the sum of $1,365.56 to Abraham Leffier, of Savannah, to secure notes given to those parties dated April 7th, 1879.
This is the substance of the testimony on the part of the plaintiffs. The defendant's clerk, E. S. White, testified that he had never seen defendant make a fraudulent sale of any of his property. He explained that corn and hay were shipped to the store in his name for Lilienthal, because a steamboat captain said he would not bring goods for L., but would bring them for witness. He did not know of goods being sent out of the store, except in the usual course of business; was generally in the store, sometimes absent, had charge of the business; did not know that defendant intended to mortgage the goods; cash sales were sometimes as high as $35 and $50 per day. De fendant did not pay over cash received to the mortgagees, but paid a few small debts about home.
Defendant being sworn, said he had not disposed of his property fraudulently; the mortgages were given to his brothers and brother-in-law, who were his oldest creditors; schedules of property were attached to the mortgages after signing, and I directed White to have them recorded; afterward kept the store open and continued to sell and on-sume goods as usual until attachment was levied; mortgages cover all my property; did not pay the mortgagees anything from proceeds of sale.
The Judge charged the jury at some length, to the effect that upon this issue plaintiffs must show actual fraud on the part of defendant. The Judge also gave instructions submitted in writing by plaintiffs' counfeel.
Ho part of the charge or instructions was excepted to by *133 either party -while the jury were at the bar. It is proper to remark, however, that the charge and the instructions given do not seem to be pertinent to the case made by the traverse of the affidavit. The cause was submitted to the jury upon the evidence, and upon immaterial and hypothetical propositions regarding questions of fraud in the matter of the mortgages and the sale of mortgaged goods by defendant, and the preferring of creditors.
Whether there was fraud in giving the mortgages was not a question under the issues which the jury were sworn to try. The sole issues before the court and jury were these: whether the defendant ow'ed the plaintiffs as alleged,. and whether the affiant liad good reason to believe that the defendant would part with his property fraudulently, before judgment could be recovered against him.
The proof shows the existence df the past due indebtedness. The defendant upon the trial does not attempt to controvert this fact. The proofs on the part of the plaintiffs show that they were importuning defendant for payment, and he was asking for time and postponing payment, studiously avoiding meeting the plaintiffs’ attorney, paying nothing, although daily receiving money; going to Pa-latka to get money, and afterwards avoiding the affiant, either to pay or explain; receiving goods at the store, consigned in the name of his clerk, and mingling and selling them with his other goods, and hauling loads’’ of goods from his store to his dwelling-house.
The defendant’s evidence, and that of his clerk, do not contradict one word of the evidence on the part of the plaintiffs. The explanation of the clerk as to the reason why goods were consigned to him for his principal only confirms the testimony of plaintiffs’ witness as to the fact.
The testimony on the part of the plaintiffs clearly sustains the'affidavit, that the defendant was so managing his business, and so conducting himself, that the affiant had reason to believe that defendant would fraudulently part with his property to avoid or delay payment of his debts. The facts here shown, and not contradicted, were ample to lead any prudent creditor to the same conclusions. The giving of the mortgages by defendant to his brothers and other relatives were not known to affiant when he made the affidavit, though they had been made and recorded several days before the making of the affidavit, but the fact of giving the mortgages, under the circumstances, justified the affiant’s suspicions, and tended to show that defendant was not acting in good faith toward plaintiffs. Whether these mortgages were in fact and in law fraudulent was not a question in this issue, and the jury were doubtless misled by the instructions and charge of the court. We do not consider the charge in our conclusions upon this matter, because no exception was reserved, but we may say that we cannot account for the verdict against the plaintiffs, except that they were led in some way to misapprehend the issues properly before them, and to render a verdict clearly against the facts and the law df the case.
Upon the verdict being rendered the plaintiffs asked that it be set aside and for a new trial, on the ground that the verdict was against the law and against the evidence, and the motion was denied and judgment entered by the court dismissing the attachment.
The judgment dissolving the attachment is reversed, the verdict set aside, and a new trial granted, with costs against the defendant.