## ECKMAN & VETSBURG, APPELLANTS, VS. J. K. MUNNERLYN, APPELLEE.

1. A mortgage covering a stock of merchandise, under which the mortgagor is permitted by agreement or understanding of the mortgagee to sell the goods at discretion, or in the usual course of business, is fraudulent and void as to existing creditors of the mortgagor, and it makes no difference whether the agreement or understanding in reference to the sale of the

goods be expressed in the mortgage itself or not. If it was so agreed or understood at the time the mortgage was executed, whether in writing or parol, the security is thereby rendered void as to the creditors of the mortgagor.

2. Where the mortgagor of a stock of merchandise is permitted by the mortgagee to sell the same in the usual course of trade, without accounting for the proceeds, it will justify the creditors of the mortgagor in suing out an attachment against him on the ground that they have reason to believe that he will fraudulently part with his property before they can obtain judgment against him. The issue in such case being not that an intentional fraud existed, but whether or not the affiant in the attachment proceedings had reason to believe that the defendant would fraudulently part with his property before judgment could be obtained against him.

Appeal from the Circuit Court for Hillsborough county.

The facts of the case are stated in the opinion of the court.

*Phillips & Carter* for Appellants.

*R. H. Liggett* for Appellees.

MABRY, J. :

Samuel H. Eckman and Abraham Vetsburg, as co-partners, doing business in the firm name of Eckman & Vetsburg, commenced in the Circuit Court for Hillsborough county, Florida, on the 10th day of December, A. D. 1888, a suit of attachment returnable rule day in January, 1889, against J. K. Munnerlyn. The affidavit upon which the attachment is based was made by an agent of the plaintiffs, and after reciting that fact, states "that James K. Munnerlyn, of the county of Hillsborough, is justly indebted to the said Eckman & Vetsburg in the sum of nine hundred and forty-five and 60-100 dollars, and that the said amount is actu-

ally due, and affiant has reason to believe that the said James K. Munnerlyn will fraudulently part with his property before judgment can be recovered against him." On the day of the issuance of the attachment writ it was levied upon certain real estate situated in Hillsborough county, as the property of the defendant in attachment, and on the 28th day of the same month it was further levied upon a part of a stock of goods belonging to defendant, being in a certain store house in Clear Water Harbor, an inventory of the same being referred to in the sheriff's return. The defendant Munnerlyn entered a motion on rule day in January, 1889, to dissolve the attachment, and filed an affidavit traversing the ground upon which it had issued. An additional motion to dissolve the attachment was made on the 16th day of January, 1889, on the grounds:

1st. That the bond of attachment was not executed by plaintiffs.

2nd. That said attachment bond is executed in the firm name of Eckman & Vetsburg, and not by the individual members of the copartnership.

A jury was waived and the cause submitted to the court, and the following judgment entered, viz: "This cause coming on to be heard upon traverse of the plaintiffs' affidavit, and upon motion to dissolve the attachment herein, the court having heard and examined the evidence and testimony, and listened to the argument of counsel, and being fully advised in the premises, the court being satisfied that there is not sufficient evidence presented to sustain the allegations in the plaintiffs' affidavit for attachment, it is therefore ordered that said attachment be and the same is hereby dissolved, and the property held by the sheriff

24

thereunder be released and restored to the defendant herein."

The bill of exceptions recites that the objections to the execution of the bond were overruled by the court, but that the attachment was dissolved, and the property held by the sheriff thereunder be released and restored to defendant. Plaintiffs below appealed from the judgment of the court, and the assignment of error here is, that the court erred in granting the order dissolving the attachment. On the issue made by the traverse of the ground alleged in the affidavit for attachment, plaintiffs read without objection the said affidavit, and introduced P. S. Coggins, who testified that he was the agent for plaintiffs, and had been for three and one-half years, and made the affidavit on which the attachment was based. Two days before the attachment was sued out witness presented statement of plaintiffs' account to Munnerlyn, and he admitted it to be correct. Witness asked Munnerlyn to pay the account, but he said he could not do so, and did not have the money. Munnerlyn was then asked to pay a part of the account, and he said he could not do it. He was then asked to secure the debt in some way, but said he could not do that, and told witness that C. B. Rogers & Co. had a mortgage on his property. Witness afterwards told Munnerlyn that he (witness) was out of traveling money, and needed some, and Munnerlyn agreed to let witness have it on his own account. Munnerlyn paid nothing on the account, and owed plaintiffs about sixteen hundred dollars. Witness heard other drummers say that they could get nothing from Munnerlyn, and some were going to sue, and others attach. Ed. Clark said he would only sell Munnerlyn goods for cash. Tunno told witness that Munnerlyn was in failing circumstances. No

one told witness that Munnerlyn was trying to dispose of his property fraudulently. Munnerlyn said he had about $300 belonging to other parties, but it was placed with him on deposit. Witness and Munnerlyn went together to Duneden, and on the way Munnerlyn consulted his lawyer. Sommerville, of Duneden, told · witness that Munnerlyn had been down there to get title to some land from Douglass & Sommerville put in himself (Munnerlyn).

Plaintiffs introduced in evidence three mortgages executed by Munnerlyn and wife to C. B. Rogers & Co., to secure an alleged indebtedness therein. The first one was executed and acknowledged on the 19th day of December, 1885, to secure the payment of four promissory notes bearing date November 12th, 1885, each for $1,000, with interest at 8 per cent. until paid, and due respectively six, twelve, eighteen and twenty-four months from date. The property described in this mortgage is certain real estate situated in Clear Water Harbor, Hillsborough county, and also a "stock of merchandise" situated in a mentioned store building in the said town of Clear Water Harbor. This mortgage was not admitted to record until the 20th day of September, 1888. The second mortgage, executed by J. K. Munnerlyn alone, to C. B. Rogers & Co., bears date December 15th, 1888, and was filed for record and recorded the 18th day of December, 1888. This mortgage recites that the said Munnerlyn "is justly indebted to the said party of the second part (C. B. Rogers & Co.), in the sum of $4,320, which indebtedness is now witnessed by four certain promissory notes for $1,080 each, dated December 13th, 1888, and due respectively at six, twelve, eighteen months and two years from date, the payment thereof being secured by a mortgage executed December 13th, 1888, by James

K. Munnerlyn and Sarah J. Munnerlyn, his wife, to said parties of the second part herein. And whereas the said parties of the second part consider that said mortgage upon said property therein described is not sufficient to secure them for the amount due upon said notes, now therefore, in consideration of the indebtedness above described, and the further consideration of one dollar in hand paid," and to further secure said indebtedness the mortgagor conveys all the stock in trade of goods, wares and merchandise in a store on Cleveland street, Clear Water Harbor, upon condition of defeasance upon the payment of said notes. This mortgage contains a clause that the said mortgagor shall retain possession of said granted property, but on default of payment of said notes, or any attempt on his part "to sell said goods except in the usual retail way, and that he will pay over the money received therefrom to the said parties of the second part as the goods are sold, or to remove therefrom the county of their present location, or upon any seizure of them by any process of law, then the said parties of the second part" may take possession of said property. The third mortgage being executed by Munnerlyn and wife to C. B. Rogers & Co., bears date the 21st day of December, 1888, and purports to convey four lots in Clear Water Harbor, additional to what is conveyed in the first mentioned mortgage, and for the purpose of securing the payment of $4,320. It contains the following clause, viz: "This mortgage being given to further secure the payment of the notes for the above amount given by the parties of the first part herein on December 13th, 1888, and secured by a mortgage of even date herewith, said notes being for $1,080 each, and due respectively six (6), twelve (12), eighteen (18) months and two years

from date, with 8 per cent. interest until paid." It is the usual mortgage in other respects, and was admitted to record the 31st day of December, 1888. It was ad-mitted that Munnerlyn made an assignment on De-cember 29th 1888; of all his property, preferring cer-tain of his creditors, first among them C. B. Rogers & Co. for $4,320. The assignment is not before us, and all we know of it is from the admission above stated. This was the testimony for plaintiffs.

Munnerlyn, in his own behalf, testified that he ex-ecuted to C. B. Rogers & Co. the mortgage bearing date December 19th, 1885, and that he owed said firm the $4,000 in this way: When he (Munnerlyn) bought the property on which the mortgage was given, C. B. Rogers & Co. held a mortgage on the same given by Mr. Turner, the owner, and that he (Munnerlyn) as-sumed this mortgage. The stock at that time was worth about $2,500. He had never paid any of the principal of the mortgage debt, but had paid the in-terest up to the last time, and in making the new mortgage had included the last year's interest. The wife of C. B. Rogers was the sister of Munnerlyn's wife. He (Munnerlyn) had continued in possession of the store and goods from the time of giving the mort-gage up to the time of the levy of the attachment, and had sold the goods in the usual course of business; had sold out part of the original stock and purchased new goods. He had tried to raise the money to meet these claims, and another party named had been try-ing to raise money for him on some property, and that he had asked his creditors for time. When he and Coggins went to Duneden he (Munnerlyn) consulted with his attorney as to what was best to be done, and discussed making an assignment, but concluded it would do no good. Did make an assignment Decem-

ber 29th, 1888, of all his property, except his consti-
tutional exemptions, for the benefit of his creditors,
preferring certain of them, and C. B. Rogers & Co.
first for $4,320. He had been offered $3,500 for a part
of the property mortgaged in 1885, but had refused it.
At the time of testifying his stock was worth about
$4,000.

On the testimony, substantially as above given, the
decision of the court was adverse to the plaintiffs.
There is no controversy as to the indebtedness, and the
question for our consideration is whether or not the
court was correct in holding that the affiant in the at-
tachment affidavit did not have good reason to believe
when the writ was sued out that the defendant would
fraudulently part with his property before judgment
could be recovered against him. Meinhard Bros. &
Co. vs. Lilienthal, 17 Fla., 501. It has been decided
in this State that a mortgage of a stock of goods by
the owner, under which the mortgagor is permitted by
the mortgagee to sell the goods at his discretion, or in
the usual course of business, is fraudulent and void as
to the creditors of the mortgagor. Logan vs. Logan,
22 Fla., 561. This has been a vexed question in the
courts of this country, and many able decisions are to
be found on both sides of it. In the case of Robinson
vs. Elliott, 22 Wallace, 513, the Supreme Court of the
United States unanimously held that a mortgage pro-
viding for the retention of the mortgaged goods, wares
and merchandise by the mortgagor until after default
in the payment of some portion of the debt attempted
to be secured, with power to sell the same in the usual
course of trade, and to supply their places with other
goods to be substituted when bought, to the lien of the
mortgage, was void in law upon its face as to creditors
of the mortgagor. In recent decisions of the same

court there are expressions of judges indicating that if the question was an open one, a different view would be preferred. *Vide* Etheridge vs. Sperry, 139 U. S., 266. The decision in our own court—Logan vs. Logan, *supra*—is sustained by many decisions, and so far as it has gone is the law here. In this case it appeared that *by the terms of the mortgage* the mortgagor had the right to dispose of the merchandise at will, but the opinion quotes the views of Pierce on Mortgages of Merchandise, to the effect that the same result follows whether by the terms of the mortgage the mortgagee permits the goods to be sold in the usual course of trade, or where such agreement or understanding of the parties appears by proof *aliunde* the mortgage.

In Southard vs. Benner, 72 N. Y., 424, it is said: "Whether the agreement is in or out of the mortgage, whether verbal or in writing, can make no difference in principle. Its effect as characterizing the transaction would be the same. The difference in the modes of proving the agreement can not take the sting out of the fact and render it harmless. If it be satisfactorily established, the result upon the security must be the same. It is the fact that such an agreement has been made and acted upon that in law condemns the security, and not the fact that it is proved by the instrument of suretyship, instead of by parol or in some other way." The conclusion of the court in Freeman vs. Rawson, 5 Ohio St., 1, is summed up as follows, *viz:* "From the considerations and authorities we have adduced, we are of opinion that these conclusions necessarily follow: That a mortgage of personal property, with possession, and a power of disposition reserved to the mortgagor, is fraudulent and void as against his other creditors. If the power of disposition appear

upon the face of the mortgage, or is fairly to be inferred from its provisions, it is the duty of the court so to declare it, without submitting the matter to the jury as a question of fact. If it does not so appear, but is so understood or agreed by the parties at the time the mortgage is executed, it is equally void; and such understanding or agreement may be shown by parol evidence, and may be proved by the conduct of the parties in relation to the subject-matter of the mortgage, and other circumstances, as in other cases. And that in either case, where the fact is made to appear, the mortgage is fraudulent in law irrespective of the intention of the parties." There are many decisions sustaining this view. Barnel vs. Fergus, 51 Ill., 352; Horton vs. Williams, 21 Minn., 187; Stern vs. Munch, 24 Minn., 390; Orten vs. Orten, 7 Oregon, 478; National Bank vs. Goodrich, 3 Col., 139; Putnam vs. Osgood, 52 N. H., 148; Stewart vs. Duester, 23 Wis., 136; Chetham vs. Hawkins, 80 N. C., 161; Harmon vs. Hoskins, 56 Miss., 142; Googins vs. Gilmore, 47 Maine, 9. The case of Ephraim vs. Kelleher, 4 Washington, 243, cited by counsel for appellee, belongs to that class of decisions holding that a clause in the mortgage giving the mortgagor a right to sell is not fraudulent in law. Where the agreement to sell is contained in the mortgage, it is settled here that it is fraudulent in law as to the mortgagor's creditors, and it is the duty of the court to so declare. If such agreement or understanding of the mortgagor and mortgagee be not found in the mortgage itself, some decisions maintain that the question of whether there is any such understanding, as well as what are the inferences of fraud arising from it, is one for the jury. Williston vs. Jones, 6 Duer, 504; Smith vs. Acker, 23 Wend., 653; Kavanaugh vs. Beckwith, 44 Barb., 192. In the case

before us a jury was waived and the court decided the issue. The conclusion from the evidence is irresistible that from the time of executing the mortgage in December, 1885, up to the levy of the attachment, Munnerlyn continued to sell and dispose of the stock of goods therein mentioned in the usual course of business, and that this was done with the understanding and consent of the mortgagees. There was no attempt to perfect the lien of the mortgage, so far as the stock of goods is concerned, by its record, until a short time before the attachment suit was commenced, and after its record the same course of business was pursued by the mortgagee until the levy of the writ. Two days before the levy when demand for payment was made by appellants' agent he was informed by Munnerlyn that C. B. Rogers & Co. had a mortgage on his (Munnerlyn's) property. The validity of the mortgages, as between C. B. Rogers & Co. and appellants, or as between said firm and Munnerlyn, is not involved in the question now before us. Considering the mortgages executed by Munnerlyn to C. B. Rogers & Co. subsequent to the suing out of the attachment only as explanatory of conduct prior to that date, the one on merchandise indicates that the parties thereto designed a better security than that already existing on the stock, and to change the legal effect of the past security by reason of the permissive sales thereunder by requiring the proceeds to be paid to the mortgagees as the goods were disposed of under the subsequent mortgage. We do not say that the subsequent chattel mortgage of December 15th, 1888, by reason of the clauses therein in reference to possession of the goods, is fraudulent in law upon its face. But conceding its validity here, it tends to strengthen the conclusion that under the former mortgage the mort-

gagor had the right to dispose of the goods at will in the usual course of trade without any agreement as to the disposition of the proceeds. We think it is at least *prima facie* shown by the evidence before us, without anything to rebut it, that by the understanding and agreement of the parties, Munnerlyn was permitted to sell the stock of goods described in the mortgage executed in 1885, and recorded in September, 1888, in the usual course of trade without any agreement as to what he would do with the proceeds; and whether we hold such sales under such an understanding to be fraudulent in law as against Munnerlyn's creditors, or as proof of such fact, the conclusion here will be the same. Such an understanding between mortgagor and mortgagee if not conclusively fraudulent in law, is at least *prima facie* evidence of fraud. *Vide* authorities *supra.* A conclusion on the evidence in this record, that there was no such understanding or agreement, would be against the evidence. Munnerlyn himself says that he had continued in possession of the store and goods from the time of executing the mortgage in 1885, up to the time of the levy of the attachment, and that he had continued during all this time to sell the goods in the usual course of trade. There is no evidence rebutting the conclusion that such an understanding did exist. The disposition of the merchandise under such an understanding and arrangement is inconsistent with the rights of creditors, and if sustained would afford an effectual shield of the debtor's property from liability to seizure while he retained not only the use of it, but an absolute power of disposition, without accounting to either the mortgagees or other creditors for the proceeds. "The effect is, of course, that the property thus shut up from the reach of general creditors may

Eckman & Vetsburg v. J. K. Munnerlyn.—Opinion of Court.

be entirely disposed of without the proceeds going either to the outside creditors or to the beneficiaries in the deed. The only party certainly benefitted by it is the debtor or grantor who has the power to convert every portion of the property to his own use. The deed, if sustained, would serve the purpose of protecting the property against the grantor's creditors, and, at the same time, authorize him to convert it to his own use by an absolute sale." State vs. Tasker, 31 Mo., 445; Leser vs. Glaser, 32 Kansas, 546.

There are certain acts which, under particular circumstances, the law pronounces fraudulent. They may be innocently intended, so far as the idea of moral turpitude goes, yet their inevitable tendency is so uniformly against fair dealing that they are stamped with a fraudulent character, regardless of the honesty of the particular transaction. Wade says: "The class of cases in which this question has been most earnestly discussed, and in respect to which the most pronounced difference of opinion seems to exist, is that embracing mortgages of stocks in trade. On the one hand, it has been maintained that the mere fact that the mortgagor is permitted to remain in possession of the goods, and continue to sell and dispose of them in the ordinary course, does not necessarily render the mortgage fraudulent as against creditors. On the other, it is claimed that such an incumbrance amounts to a conveyance to the use of the grantor, and is fraudulent *per se*, even when the act is entirely disconnected with any intentional fraud. Where the former view is supported, it is claimed that the question of fraud is one of fact, to be proved by showing an intention to hinder, delay or defraud other creditors than the mortgagee. Those holding to the latter view condemn the transaction not because it is in fact and

intention fraudulent, but for the reason that it is such a convenient cover for active fraud, where exposure is made to depend upon testimony of those who are participants and beneficiaries. The latter view is, of the two, better supported on both principle and authority." 1 Wade on Attachment, Section 96, page 205.

The execution of the mortgage on the stock of goods and the continued disposal of them in the usual course of business with the consent and understanding of the mortgagees, amounted to a fraud upon the other creditors of the mortgagor, and they had a right to so regard it. Munnerlyn when payment was demanded by the agent of appellants stated that he could not meet the demand, and gave as a reason that C. B. Rogers & Co. had a mortgage on his property, thereby affording good grounds for such agent to believe that as between Munnerlyn and said mortgagees all of the former's property was then subject to the mortgage under which he was then selling the goods in the usual course of trade. The agent had a right to rely upon the statement of Munnerlyn himself that the mortgage referred to covered all of his stock of goods at that time although it did not in terms embrace subsequent additions to the stock. Such conduct will sustain an attachment on the ground that plaintiffs have good ground to believe that defendant will fraudulently part with his property before judgment can be recovered against him.

The decision of the court in the record before us was therefore erroneous in the traverse of the attachment affidavit, and should be reversed.